815 N.E.2d 216 (2004)
In re the Matter of the ADOPTION OF M.A.S.,
Dale Wayne Evans, Appellant-Respondent,
v.
Christopher Murray, Appellee-Petitioner.
No. 17A03-0403-CV-149.
Court of Appeals of Indiana.
September 28, 2004.
*218 Thompson Smith, John Martin Smith & Thompson Smith, Auburn, IN, Attorney for Appellant.
Eugene C. Bosworth, Auburn, IN, Attorney for Appellee.

OPINION
SHARPNACK, Judge.
Dale Wayne Evans ("Father") appeals the trial court's grant of a petition to adopt M.A.S. filed by Christopher Murray ("Stepfather"). Father raises three issues, which we consolidate and restate as whether the trial court erred by granting Stepfather's petition to adopt M.A.S. We affirm.
The relevant facts follow. In 1999, Father and Sara Stempien Murray ("Mother") lived together with Mother's daughter from a previous relationship, A.S. On November 15, 1999, A.S. died, and the State filed criminal charges against Father as a result of A.S.'s death. M.A.S. was born to Father and Mother on July 13, 2000. Shortly after M.A.S.'s birth, the State filed a child in need of services ("CHINS") action, and the trial court ordered Father to have supervised visitation and pay child support for M.A.S. in the amount of $50.00 per week. Father paid the child support on January 2, 2001 and January 30, 2001, but paid no further support thereafter. In March 2002, a jury found Father not guilty of the criminal charges related to A.S.'s death. The trial court's child support order terminated when the CHINS action was dismissed in May 2002.
Father also has two other children with Angela Evans Stacy. Father was ordered to pay $100.00 per week in child support for those two children but stopped making payments on January 30, 2001. Father resumed the child support payments of $110.00 per week on April 15, 2002, four days before the children's stepfather, Lee Stacy, filed a petition to adopt the two children. On November 12, 2002, the trial court granted Stacy's petition to adopt the children.
In November 2002, Father filed an action to establish paternity of M.A.S. On January 8, 2003, Stepfather filed a petition to adopt M.A.S., and Father objected to Stepfather's petition. At a hearing on Stepfather's petition, the trial court excluded photographs, a t-shirt, a visitation log, and a letter to the trial court that Father sought to admit. The trial court found that Father had failed to pay any child support from January 30, 2001 through January 8, 2003, a period of over twenty-three months, and, therefore, his consent to the adoption was not required. Further, the trial court found that "[i]t is in the best interests of [M.A.S.] that he be adopted by [Stepfather]." Appellant's Appendix at 4. Thus, the trial court granted Stepfather's petition to adopt M.A.S.
The issue is whether the trial court erred by granting Stepfather's petition to adopt M.A.S. When reviewing a trial court's ruling in an adoption proceeding, we will not disturb that ruling unless the evidence leads to but one conclusion and the trial judge reached an opposite conclusion. Rust v. Lawson, 714 N.E.2d 769, 771 (Ind.Ct.App.1999), trans. denied. We will not reweigh the evidence but instead will examine the evidence most favorable to the trial court's decision together with reasonable *219 inferences drawn therefrom to determine whether sufficient evidence exists to sustain the decision. Id. The decision of the trial court is presumed to be correct, and it is the appellant's burden to overcome that presumption. Id.

A. Father's Consent to the Adoption

Stepfather argued, and the trial court found, that Father's consent to the adoption was not required because Father had failed to provide support for M.A.S. Ind.Code § 31-19-11-1 (Supp.2003) provides that the trial court "shall grant the petition for adoption and enter an adoption decree" if the court hears evidence and finds, in part, that "proper consent, if consent is necessary, to the adoption has been given." According to Ind.Code § 31-19-9-8(a) (Supp.2003):
Consent to adoption, which may be required under section 1 of this chapter, is not required from any of the following:
* * * * *
(2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
(A) fails without justifiable cause to communicate significantly with the child when able to do so; or
(B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.
Stepfather had the "burden of proving that the parent's consent to the adoption [was] unnecessary." Ind.Code § 31-19-10-1.2(a) (Supp.2003).
At trial, Stepfather did not argue that Father failed to communicate significantly with M.A.S. Rather, Stepfather argued only that Father knowingly failed to provide for M.A.S.'s care and support when he was able to do so, and the trial court agreed. On appeal, Father argues that: (1) he did not "knowingly" fail to provide support; and (2) he was not "able to do so" because of other legal problems.
As an initial matter, we address the applicable burden of proof in this case. Father argues that Stepfather had the burden of proving the statutory criteria for dispensing with consent in Ind.Code § 31-19-9-8(a)(2) by "clear, cogent, and indubitable evidence." Rust, 714 N.E.2d at 771; In re Bryant, 134 Ind.App. 480, 493, 189 N.E.2d 593, 600 (1963). On the other hand, Stepfather argues that his burden was to show by "clear and convincing evidence" that Father's consent was not required under Ind.Code § 31-19-9-8(a)(2). Appellee's Brief at 10.
In 1963, the standard of "clear, cogent, and indubitable evidence" was first utilized by this court in Bryant, 134 Ind.App. at 493, 189 N.E.2d at 600. Our court has defined "indubitable" as "not open to question or doubt: too evident to be doubted: UNQUESTIONABLE." In re Augustyniak, 505 N.E.2d 868, 870 (Ind.Ct.App.1987), reh'g denied, 508 N.E.2d 1307 (Ind.Ct.App.1987), trans. denied. As Stepfather argues, this standard appears to be even more stringent than the "beyond a reasonable doubt" standard used in criminal trials. See, e.g., Winegeart v. State, 665 N.E.2d 893, 902 (Ind.1996) ("Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt.").
In 2003, the legislature added the following to Ind.Code § 31-19-9-8(a):
Consent to adoption, which may be required under section 1 of this chapter, is not required from any of the following:
* * * * *
(11) A parent if:

*220 (A) a petitioner for adoption proves by clear and convincing evidence that the parent is unfit to be a parent; and
(B) the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent.
(emphasis added); see Pub.L. No. 61-2003, § 11 (eff. July 1, 2003). Under Father's argument, a petitioner for adoption would be required to prove by "clear and convincing" evidence that the parent was unfit but prove by "clear, cogent, and undubitable" evidence that the parent had knowingly failed to provide support. The legislature could not have intended such a result. See Town of Leo-Cedarville v. Ind. Alcoholic Beverage Comm'n, 754 N.E.2d 1041, 1051 (Ind.Ct.App.2001) (holding that the legislature could not have intended the statutory interpretation advocated by an appellant), trans. denied.
A conclusion that the burden of proof is "clear and convincing evidence" is further supported by Ind.Code § 31-37-14-2 (1998), which concerns the burden of proof in proceedings to terminate parental rights and provides that "[a] finding in a proceeding to terminate parental rights must be based upon clear and convincing evidence." (emphasis added). Moreover, our supreme court recently held that "before placing a child in the custody of a person other than the natural parent, a trial court must be satisfied by clear and convincing evidence that the best interests of the child require such a placement." In re Guardianship of B.H., 770 N.E.2d 283, 287 (Ind.2002) (emphasis added), reh'g denied. Consequently, we conclude that Stepfather was required to prove by clear and convincing evidence that Father's consent was not required under Ind.Code § 31-19-9-8(a)(2). In applying this standard, we also note:
in reviewing a judgment requiring proof by clear and convincing evidence, an appellate court may not impose its own view as to whether the evidence is clear and convincing but must determine, by considering only the probative evidence and reasonable inferences supporting the judgment and without weighing evidence or assessing witness credibility, whether a reasonable trier of fact could conclude that the judgment was established by clear and convincing evidence.
Id. at 288.
Father first argues that he did not knowingly fail to pay child support. According to Father, his obligation to pay child support ended when the CHINS action was terminated in May 2002. Father also argues that, even after May 2002, child support payments were being withheld from his paychecks and he thought the child support payments applied to M.A.S. along with his other two children.[1]
Indiana law imposes a duty upon a parent to support his children. Irvin v. Hood, 712 N.E.2d 1012, 1014 (Ind.Ct.App.1999). This duty exists apart from any court order or statute. Id. Consequently, even though the trial court's order to pay child support for M.A.S. terminated when the CHINS action was dismissed in May 2002, Father still had a duty to support *221 M.A.S. It is undisputed that Father failed to pay child support for M.A.S. from January 30, 2001 through January 8, 2003. Although Father argues that he thought the child support being withheld from his paychecks applied to M.A.S. as well as his other two children, the trial court found this argument unpersuasive. The evidence presented at the trial revealed that after a fifteen-month period of not paying child support, Father resumed paying the child support in question only a few days before a petition to adopt his other two children was filed. The payments were $110 per week, but Father had previously been ordered to pay $100 per week for the support of his other two children and $50 per week for M.A.S. This evidence implies that Father was aware the child support applied only to his other two children. Father simply asks that we reweigh the evidence and judge his credibility, which we cannot do. Rust, 714 N.E.2d at 771.
Father argues that he was not able to pay child support because he was "mired in a legal morass" as a result of the criminal charges, the CHINS actions, a court order requiring him to move out of his house, a bankruptcy, and his loss of jobs due to the criminal prosecution. Appellant's Brief at 22-23. As previously noted, Ind.Code Ind.Code § 31-19-9-8(a)(2)(B) provides that consent is not required if Father "knowingly fail[ed] to provide for the care and support of [M.A.S.] when able to do so as required by law or judicial decree." (emphasis added). A petitioner for adoption must show that the noncustodial parent had the ability to make the payments that he failed to make. In re Augustyniak, 508 N.E.2d 1307, 1308 (Ind.Ct.App.1987) (opinion on rehearing), trans. denied. That ability cannot be adequately shown by proof of income standing alone. Id. To determine that ability, it is necessary to consider the totality of the circumstances. Id.
Father failed to pay child support for M.A.S. from January 2001 through January 2003. During this time, Father was employed at Wal-Mart and Sam's Club. The only evidence of Father's expenses during this time were payments of $30.00 an hour for supervised visitations with his other children from the time that their CHINS case was dismissed[2] until they were adopted by their stepfather in November 2002. However, Father admitted that he was not required to pay for supervised visits with M.A.S. Father also testified that he paid $1,000 for bail. The trial court found that Father had sufficient income to "pay something on the support order for [M.A.S.] and then to pay something for support to meet his legal duty to pay support for [M.A.S.]." Appellant's Appendix at 4. We cannot say that the evidence leads to but one conclusion and the trial judge reached an opposite conclusion. We conclude that, under the totality of the circumstances, Stepfather proved by clear and convincing evidence that Father was able to provide support for M.A.S. but failed to do so.
Because Stepfather proved by clear and convincing evidence that Father knowingly failed for "a period of at least one (1) year" to "provide for the care and support of [M.A.S.] when able to do so," Father's consent to the adoption was not required. I.C. § 31-19-9-8(a). Thus, the trial court did not err by finding that Father's consent to the adoption was not required. See, e.g., Irvin, 712 N.E.2d at 1014 (holding that the father's consent to an adoption was not necessary because he had failed to *222 provide support to the child for more than one year).

B. Best Interests

Father argues that the trial court's grant of the adoption petition was not in M.A.S.'s best interests. Ind.Code § 31-19-11-1(a) provides:
Whenever the court has heard the evidence and finds that:
(1) the adoption requested is in the best interest of the child;
(2) the petitioner or petitioners for adoption are of sufficient ability to rear the child and furnish suitable support and education;
(3) the report of the investigation and recommendation under IC XX-XX-X-X has been filed;
* * * * *
(7) proper consent, if consent is necessary, to the adoption has been given;
* * * * *
the court shall grant the petition for adoption and enter an adoption decree.
Father's sole arguments relate to the trial court's evidentiary decisions. A trial court has discretionary power when ruling on the admissibility of evidence, and we review its decisions for an abuse of that discretion. In re W.B., 772 N.E.2d 522, 532 (Ind.Ct.App.2002). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and the circumstances. In re A.C., 770 N.E.2d 947, 951 (Ind.Ct.App.2002).
Father first argues that the trial court should not have limited his presentation of evidence regarding M.A.S.'s best interests. During the hearing, Father sought to admit pictures of himself and M.A.S., a log of Father's visitation with M.A.S., evidence of a t-shirt worn by M.A.S. to Father's wedding,[3] and a letter to the judge regarding the t-shirt. The trial court excluded the evidence because: (1) Father would not have standing to present evidence of M.A.S.'s best interests if Father's consent was not required because he failed to pay support for one year; and (2) the events occurred after the petition for adoption was filed.[4] On appeal, Father argues that the evidence was relevant to M.A.S.'s "best interests."
Even if we assume that the trial court abused its discretion by excluding the evidence, any error was harmless. Witnesses testified regarding the t-shirt and Father's relationship with M.A.S., and the trial court admitted numerous other photographs of Father with M.A.S. The excluded evidence was merely cumulative of the other evidence, and any error in its exclusion was harmless. See Ind. Trial Rule 61; Meade v. Levett, 671 N.E.2d 1172, 1178 (Ind.Ct.App.1996) (holding that any error in the trial court's exclusion of evidence was harmless because the evidence was cumulative of other admitted evidence). Consequently, the trial court did not commit *223 reversible error by refusing to admit the evidence in question.
Father also argues that the trial court abused its discretion by considering a home study report submitted to the trial court by the DeKalb County Division of Family and Children. Ind.Code § 31-19-11-1(a)(3) requires that a "report of the investigation and recommendation under IC XX-XX-X-X" be filed. Ind.Code 31-19-8-5 (1998) provides:
(a) Not more than sixty (60) days from the date of reference of a petition for adoption to each appropriate agency, each agency shall submit to the court a written report of and the agency's investigation recommendation as to the advisability of the adoption.
(b) The agency's report and recommendation:
(1) shall be filed with the adoption proceedings; and
(2) become a part of the proceedings.
Father objected to the consideration of the report based upon hearsay grounds and, on appeal, argues that the report was hearsay and should not have been considered. In support of his argument, Father relies upon In re E.T., 808 N.E.2d 639, 645 (Ind.2004), where our supreme court held in an involuntary termination of parental rights case that reports compiled by a social services agency describing home visits and supervised visitations did not qualify as business records and, thus, were not admissible under an exception to the hearsay rule. We find E.T. to be distinguishable because the statute here specifically provides that the report "shall be filed with the adoption proceedings" and "become part of the proceedings." I.C. XX-XX-X-X. No such statute was applicable to the reports in E.T.
We acknowledge that such reports are "not admissible over objection in a contested case, i.e., a case in which a party whose consent is required refuses to do so." Krieg v. Glassburn, 419 N.E.2d 1015, 1021 n. 5 (Ind.Ct.App.1981) (citing Attkisson v. Usrey, 224 Ind. 155, 160-161, 65 N.E.2d 489, 491 (1946) (holding that the trial court erred by refusing to allow the parent contesting an adoption to inspect and challenge the report and recommendation)). However, this holding has no effect on our decision since Father's consent is not required. See, e.g., id. Consequently, the trial court could consider the home study report in determining whether it was in M.A.S.'s best interests to be adopted by Stepfather.
Even if the trial court abused its discretion by considering the home study report, the "improper admission of evidence is harmless error when the judgment is supported by substantial independent evidence to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the judgment." E.T., 808 N.E.2d at 645-646. Our examination of the home study report and the record reveals that much of the information in the report was also introduced into evidence through the testimony of the witnesses. Father makes no argument that he did not inspect the report, and Father does not challenge or dispute the contents of the report. Father fails to demonstrate how he was prejudiced by the trial court's consideration of the report or how the report contributed to the trial court's judgment. Consequently, even if the trial court abused its discretion by considering the report, any error was harmless. See, e.g., id. (holding that the improper admission of the reports of home visits and supervised visitations was harmless error). We conclude that the *224 trial court did not err by granting Stepfather's petition to adopt M.A.S. See, e.g., Rust, 714 N.E.2d at 774 (holding that the trial court properly granted guardians' petition to adopt a child where the father's consent was not required under Ind.Code § 31-19-9-8(a)).
For the foregoing reasons, we affirm the trial court's grant of Stepfather's petition to adopt M.A.S.
Affirmed.
BAILEY, J. and MAY, J., concur.
NOTES
[1] Father also argues that he provided support to M.A.S. because he occasionally provided groceries, diapers, formula, clothing, presents, and cash. The trial court found that these items were gifts. We agree. Father's occasional provision of these items are gifts, not child support. See, e.g., Irvin v. Hood, 712 N.E.2d 1012, 1013 (Ind.Ct.App.1999) (holding that the father had failed to support his child despite the fact that he provided six items of clothing for the child and some food during the child's visits with the paternal grandparents).
[2] The record does not indicate when the CHINS case was dismissed for the other two children. However, the CHINS case for M.A.S. was dismissed in May 2002.
[3] The t-shirt had a picture of A.S. on it with the words "Someone I Love was Murdered." Transcript at 156.
[4] On appeal, neither party cites authority regarding the admissibility of evidence related to events occurring after the petition for adoption was filed. We cannot say, as a general proposition, that evidence related to events occurring after a petition is filed is inadmissible. See, e.g., Rea v. Shroyer, 797 N.E.2d 1178, 1182 (Ind.Ct.App.2003) (holding that the trial court could consider evidence of events occurring after a father filed his petition to modify custody). For example, evidence of abuse of a child by a petitioner after the petition for adoption was filed would be relevant to the child's best interests.