## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 20 2018, 8:35 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

J. Clayton Miller
Jordan Law, LLC
Richmond, Indiana

ATTORNEYS FOR APPELLEE

Ryan H. Cassman
Brandi A. Gibson
Coots, Henke & Wheeler, P.C.
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Adoption of A.S.C., N.L., *Appellant-Respondent,* <br><br> v. <br><br> P.F. and S.F., *Appellees-Petitioners.* | April 20, 2018 <br><br> Court of Appeals Case No. 68A05-1710-AD-2365 <br><br> Appeal from the Randolph Circuit Court <br><br> The Honorable Jay L. Toney, Judge <br><br> Trial Court Cause No. 68C01-1608-AD-164 |

**Mathias, Judge.**

[1] The Randolph Circuit Court granted P.F. and S.F.'s petition (collectively "the Petitioners") to adopt A.S.C. over the biological mother's ("N.L.") objection after concluding that her consent to the adoption was not required. N.L.

appeals and argues that the trial court erred in granting the petition in several respects. First, she argues that the trial court should not have granted the adoption petition because S.F. has a felony conviction for non-support of a dependent. N.L. also argues that the trial court erred when it found that her consent was not required because she knowingly failed to support A.S.C. for more than one year. Finally, N.L. contends that the adoption is not in A.S.C.'s best interests.

We affirm.

## Facts and Procedural History

A.S.C. was born on October 23, 2009, to N.L., her biological mother, and K.C., her biological father. P.F., who is married to S.F., is K.C.'s mother and A.S.C.'s paternal grandmother. After A.S.C. was named a child in need of services ("CHINS") when she was thirteen months old, P.F. was named A.S.C.'s guardian, and the CHINS proceedings were closed. In 2013, N.L. was ordered to pay child support for A.S.C. in the amount of $43 per week.

In order to modify or terminate the guardianship, N.L. was required to complete a drug rehabilitation program, abstain from any illegal drug use or substance abuse for six months immediately preceding a request for modification or termination of the guardianship, maintain stable housing, and complete an anger management program. N.L. never made any effort to satisfy the requirements for modifying or terminating the guardianship.

[5]     In June 2012, a protective order was issued in favor of A.S.C. and against N.L. N.L.'s parenting time with the child was suspended as a result. The protective order expired in 2014, and supervised parenting time of one hour per week resumed. N.L. did not always attend her parenting time. N.L.'s employment history is sporadic, and she does not have custody of her other three children. She also lacked stable housing and has lived with her mother, friends, and boyfriends. N.L. has a long history of substance abuse and illegal drug use.

[6]     N.L. has been incarcerated on multiple occasions since A.S.C.'s birth. On July 13, 2015, N.L. was charged with and later convicted of possession of methamphetamine and theft in Wayne County, Indiana. In June 2016, she was charged as a fugitive from justice in Darke County, Ohio. In that same month, N.L. was charged with battery resulting in bodily injury and interference with reporting a crime in Randolph County, Indiana. N.L. was convicted of the battery charge. In August 2016, N.L. was charged with tampering with evidence in Darke County, Ohio. In November 2016, she was charged with telephone harassment and criminal damaging-endangering in Darke County, Ohio. She was convicted of criminal damaging-endangering. And most recently, she was charged and convicted of criminal damaging-endangering in Darke County, Ohio in March 2017.

[7]     N.L. made only six child support payments in 2013 and 2014. Her payments coincided with the State seeking to enforce the child support order. N.L.'s last child support payment was made on March 10, 2014. The child support order remained in effect, but the Petitioners asked the State to cease its attempts to

collect support because they did not want N.L. or their son K.C. to be incarcerated for failing to pay child support. P.F. told N.L. that the prosecutor's office would no longer attempt to collect unpaid support, but that N.L. was still obligated to pay child support. N.L. has not provided any child support for A.S.C. since the last payment made in March 2014.

[8] On August 1, 2016, the Petitioners filed a petition to adopt A.S.C. with K.C.'s consent. N.L., who was incarcerated at the time, filed a notice to contest the adoption. A home study was completed, and it was recommended that the Petitioners be allowed to adopt A.S.C.

[9] The trial court set a hearing on the petition for December 30, 2016. N.L. was shot by her boyfriend the night before the hearing and requested a continuance. The trial court granted her request and reset the final hearing for January 31, 2017. The court reset the final hearing date again because N.L. contacted the court to request a court-appointed attorney. N.L. requested three additional continuances and the final hearing was rescheduled to May 30, 2017.

[10] The final hearing was conducted on May 30 and July 5, 2017. The evidence established that seven-year-old A.S.C. is a happy child who excels in school and has many friends.

[11] N.L. admitted that she has not paid child support for A.S.C. since 2014, but alleged that P.F. told her that she was no longer obligated to do so. N.L. also testified that she had recently completed an anger management program. On the date of the hearing, N.L. was living with her mother.

[12] S.F. admitted that he was found in contempt multiple times for failing to support his children from a prior marriage. And in 2005, S.F. was convicted of felony nonsupport of a dependent child. S.F. acknowledged that his failure to pay child support was entirely his fault. S.F. eventually paid the arrearage and has maintained his relationship with his children.

[13] On September 13, 2017, the trial court issued a decree of adoption. The trial court found that N.L.'s consent to the adoption was not required because she failed to pay child support for at least forty-one months while under a court order to do so. The trial court also found that N.L.'s consent to the adoption was not required because N.L. is an unfit mother and the adoption was in A.S.C.'s best interests. N.L. now appeals.

## Standard of Review

[14] Pursuant to statute, a trial court shall grant a petition for adoption if the adoption is in the child's best interest, the petitioners are sufficiently capable of rearing and supporting the child, and proper consent, if required, has been given. Ind. Code § 31-19-11-1(a). We will not disturb a trial court's ruling in an adoption proceeding unless the evidence leads only to the conclusion opposite that of the trial court. *E.W. v. J.W.*, 20 N.E.3d 889, 894 (Ind. Ct. App. 2014), *trans. denied*. "Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time." *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). We do not reweigh evidence ,and we consider evidence most favorable to the decision

together with reasonable inferences drawn from that evidence. *E.W.*, 20 N.E.3d at 894. Where, as here, an adoption petition is filed without the required parental consent, the party seeking to adopt bears the burden to prove the statutory criteria for dispensing with consent by "clear and convincing evidence." *In re Adoption of M.A.S.*, 815 N.E.2d 216, 220 (Ind. Ct. App. 2004).

[15] In this case, the trial court entered written findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A). Therefore, we determine whether the evidence supports the findings of fact and second, we determine whether the findings support the judgment. *In re Adoption of A.S.*, 912 N.E.2d 840, 851 (Ind. Ct. App. 2009). Our court "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." T.R. 52(A).

## Discussion and Decision

[16] N.L. argues that the trial court erred when it issued the decree of adoption because S.F. has a felony conviction for non-support of a dependent child and the evidence does not support the trial court's findings that she knowingly failed to support A.S.C. for at least one year. N.L. also contends that the adoption is not in A.S.C.'s best interests.

### I.  S.F.'s Felony Conviction

[17] First, we address N.L.'s argument that the trial court erred when it granted the petition for adoption because S.F. has a prior felony conviction for nonsupport of a dependent. Indiana Code section 31-19-11-1(c) provides in relevant part

that "a conviction of a misdemeanor related to the health and safety of a child, or a conviction of a felony not listed" in the subdivisions of the statute "by a petitioner for adoption is a permissible basis for the court to deny the petition for adoption."[1] It was therefore within the discretion of the trial court whether to deny the petition for adoption after considering the fact that S.F. was convicted of felony nonsupport of a dependent child in 2005.

[18] The trial court considered S.F.'s conviction and the fact that he was held in contempt more than once for failing to pay child support for his dependent children. Eventually, S.F. paid the child support owed and he expressed regret for failing to pay child support. S.F. testified that he did not pay child support because he was angry at his former wife and he would not make that mistake again. The trial court acted within its discretion when it considered S.F.'s conviction and testimony and decided that it would not deny the petition to adopt due to S.F.'s prior conviction.

## II. Was N.L.'s Consent to Adoption Required?

[19] The adoption of a minor child generally requires, among other things, the written consent of the child's mother, and, if the child is born out of wedlock, the consent of the child's father whose paternity has been established by law. *In re B.W.*, 908 N.E.2d 586, 590 (Ind. 2009); Ind. Code § 31-19-9-1. A.S.C.'s

---

[1] A person who has been convicted of neglect of a dependent may not adopt a child. *See* Ind. Code § 31-19-11-1(c); *see also In re I.B.*, 32 N.E.3d 1164, 1172 (Ind. 2015). However, nonsupport of a dependent is not listed as an offense that operates as a mandatory bar to adoption. *See id*.

biological father consented to the adoption, but N.L. did not. The Petitioners argued, and the trial court found, that N.L.'s consent was not required.

[20] Indiana Code section 31-19-9-8(a) provides that consent to adoption is not required by

> A parent of a child in the custody of another person if for a period of at least one (1) year the parent . . . knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.
>
> ***
>
> A parent if . . . a petitioner for adoption proves by clear and convincing evidence that the parent is unfit to be a parent; and [] the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent.

It is well established that the provisions of Indiana Code section 31-19-9-8 are disjunctive, and "as such, either provides independent grounds for dispensing with parental consent." *In re Adoption of T.W.*, 859 N.E.2d 1215, 1218 (Ind. Ct. App. 2006).

[21] The trial court found N.L.'s consent to the adoption was not required because N.L. knowingly failed to provide support for A.S.C. for at least forty-one months and N.L. was an unfit parent. The court also found that granting the petition to adopt was in A.S.C.'s best interests.

[22] N.L. admitted that she failed to pay child support after her last payment in March 2014, but she argues that she did not *knowingly* fail to pay support. She

testified that she stopped paying support because P.F. told her she no longer needed to do so. P.F. testified that she told N.L. that she withdrew her request to the prosecutor to pursue the unpaid child support so that N.L. and K.C. would not be incarcerated for their failure to pay. But, P.F. told N.L. she was still ordered to pay child support due to the order issued in the guardianship proceedings.

[23] The trial court credited P.F.'s testimony and concluded that N.L. failed to pay court-ordered child support for at least forty-one months. The trial court also found that N.L. had funds available to pay child support but used the money to pay fees and fines imposed in her numerous criminal proceedings. And, on appeal, N.L. does not claim that she lacked funds to pay child support. Moreover, the petition to adopt A.S.C. alleged that N.L.'s consent was not required, in part, because she had not contributed to the child's support for the last two years. N.L. did not attempt to contribute to the support of A.S.C. even after she was served with the petition to adopt. This evidence supports the trial court's finding that N.L. knowingly failed to provide child support even though she had money to do so, and therefore, N.L.'s consent to the adoption was not necessary.

### III. A.S.C.'s Best Interests

[24] Finally, N.L. does not challenge the trial court's finding that she is an unfit mother, but she argues that the adoption is not in A.S.C.'s best interests. N.L. argues that P.F. is A.S.C.'s guardian which "sufficiently resolves A.S.C.'s needs" and that she has a close bond with A.S.C. Appellant's Br. at 9.

[25] The primary concern in every adoption proceeding is the best interests of the child. *In re Adoption of M.L.*, 973 N.E.2d 1216, 1224 (Ind. Ct. App. 2012). Even if a court determines that a natural parent's consent is not required for an adoption, the court must still determine whether adoption is in the child's best interests. *See* I.C. § 31-19-11-1(a)(1). In making this determination, the trial court must consider "the totality of the evidence to determine the best interests of a child." *In re Adoption of M.S.*, 10 N.E.3d 1272, 1281 (Ind. Ct. App. 2014). "Relevant factors include, among others, a parent's historical and current inability to provide a suitable environment for the child; the recommendations of the child's case worker or guardian ad litem; and the child's need for permanence and stability." *Id.* at 1281–82 (internal citations omitted).

[26] A.S.C. was raised and cared for by the Petitioners for over six years when the adoption decree was issued. She is a happy child, does well in school, and has many friends. The Petitioners have created a loving and stable home environment for A.S.C.

[27] A.S.C. loves N.L. and N.L. loves her in return, but N.L. is not fit to parent A.S.C. N.L.'s history of substance abuse and criminal activity speaks for itself. Moreover, N.L.'s lack of commitment to A.S.C. is evident in this case. A.S.C. was adjudicated a CHINS when she was thirteen months old and after P.F. was named A.S.C.'s guardian, and the CHINS proceedings were closed. In addition to failing to pay child support, N.L. never attempted to complete any of the requirements that would have allowed her to seek modification or termination of the guardianship.

For all of these reasons, we agree with the trial court that the adoption was in A.S.C.'s best interests.

# Conclusion

The trial court did not err when it determined that N.L.'s consent to A.S.C.'s adoption was unnecessary and that adoption was in A.S.C.'s best interests.

Affirmed.

Najam, J., and Barnes, J., concur.